# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Klausner Lumber One LLC,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 20-11033-KBO<br><br>**Related to D.I.** |

**DECLARATION OF NAT WASSERSTEIN IN SUPPORT OF THE MOTION OF THE DEBTOR PURSUANT TO BANKRUPTCY RULE 9019, LOCAL RULE 9013-2 AND 11 U.S.C. §§ 105(a) AND 363(b), FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THAT CERTAIN SETTLEMENT AGREEMENT BY AND AMONG KLAUSNER LUMBER ONE LLC, KLAUSNER LUMBER TWO LLC, AND KALMAR USA INC.**

I, Nat Wasserstein, being duly sworn, declare under penalty of perjury:

1. I submit this Declaration in support of the *Motion of the Debtor Pursuant to Bankruptcy Rule 9019, Local Rule 9013-2 and 11 U.S.C. §§ 105(a) and 363(b), for Entry of an Order Authorizing and Approving that Certain Settlement Agreement by and Among Klausner Lumber One LLC, Klausner Lumber Two LLC, and Kalmar USA Inc.* (the "Motion")[2] to which this Declaration is attached.

2. This Declaration is intended to provide factual support for the proposed settlement between Klausner Lumber One ("KL1" or the "Debtor"), Klausner Lumber Two ("KL2") and Kalmar USA Inc. ("Kalmar" and together with KL1, and KL2, the "Parties"). The terms of such settlement are forth in that certain Settlement Agreement attached to the Motion as **Exhibit [ ]** (the "Settlement Agreement").

---

[1] The last four digits of the Debtor's federal EIN are 9109. The Debtor's mailing address is Klausner Lumber One LLC, P.O. Box 878, Middleburg, VA 20118.

[2] Terms not specifically defined herein shall have the meaning ascribed to such terms in the Motion.

3. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge of the Debtor's operation and finances, information learned from my review of relevant documents, and information I have received from other members of the Debtor's management team and the Debtor's advisors.

4. I am over the age of 18 and authorized to submit this declaration (this "Declaration") on behalf of Debtor. If called to testify, I could and would competently testify to the facts and opinions as set forth in this Declaration.

### Background and Credentials

5. On May 1, 2020, I was appointed as an independent director on the Board of Directors of the Debtor. I was selected for this position based on my personal experience. I have over twenty five (25) years of experience at the highest levels of business and complex finance.

6. As an independent director, I am an impartial member of the Board of Directors.

7. Prior to my appointment, I had no connections with the Debtor or the Debtor's management.

8. Separately from the rest of the Board of Directors, the Debtor's advisors keep me apprised of what is happening in this Case by providing me with frequent updates about the progress of the Debtor's efforts. I am generally familiar with the Debtor's day-to-day operations, business and financial affairs, results of operations, cash flows, and underlying books and records.

9. In my role as independent director, I am required to act as to any matters, which, pursuant to Delaware law, would require consideration, advice, consent, action, or other matters by a director which is independent of the Debtor, its insiders, or affiliates. I am also required to oversee the actions of Michael Freeman, the Debtor's Chief Restructuring Officer, which I have done since my appointment.

**The Debtor's Settlement Efforts**

10. KL1 and KL2 were both signatories to certain equipment leases (the "Leases") with Kalmar regarding fourteen Kalmar forklifts (the "Assets").

11. As of the date hereof, the Leases have expired and the Parties have been negotiating the ownership and distribution of proceeds related to the Assets.

12. Certain of the Assets remain in the possession of KL1 and certain of the Assets remain in the possession of KL2.

13. In light of the foregoing and as a result of certain third parties having expressed interest in purchasing the Assets to the Debtor's advisors, the Parties began discussions to establish a mutually beneficial arrangement which would allow KL1 and KL2 to sell the Assets in their possession and obtain commissions as a result of such sales.

14. The Settlement Agreement was a result of good-faith, arm's-length negotiations. For more than a month, the Debtor, KL2, and Kalmar have exchanged a series of emails and phone calls through which the terms of the settlement were solidified into the Settlement Agreement.

15. As a result of these negotiations, the Debtor, KL2 and Kalmar reached a settlement that is beneficial to all Parties, including the Debtor.

16. After reviewing the terms of the Settlement Agreement, I believe the terms of the Settlement Agreement are fair, reasonable under the circumstances, and will allow the Debtor to maximize its value for all stakeholders.

17. The Settlement Agreement avoids the unnecessary delays, uncertainty, and expense associated with negotiating and/or litigating any further and/or piecemeal resolution of the ownership of the Assets and the Kalmar Claim.

18. Moreover, the proposed Settlement Agreement benefits the value of the Debtor's operations be providing the Debtor with access to potential liquidity.

19. In sum, it is my professional opinion that entry into the Settlement Agreement is a sound exercise of Debtor's business judgment.

I declare under penalty of perjury under the laws of the State of Delaware that the foregoing is true and correct.

Executed this 1st day of September, 2020.

_____
Nat Wasserstein